**WO**                                                                                                               JDN

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sterling Arlandis Worley, | No. CV 07-838-PHX-MHM (ECV) |
| Plaintiff, | **ORDER** |
| vs. | |
| Arizona Department of Corrections, et al., | |
| Defendants. | |

Plaintiff Sterling Arlandis Worley brought this civil rights action under 42 U.S.C. § 1983 against John Risch, an officer with the Arizona Department of Corrections (ADC) (Doc. #1).[1] Defendant moved to dismiss for failure to exhaust administrative remedies (Doc. #6). Plaintiff responded, and Defendant replied (Doc. ##8-9). The Court will grant Defendant's Motion to Dismiss and terminate the action.

**I.    Parties' Contentions**

Plaintiff's claim arose during his confinement at the ADC Central Unit (Doc. #1). Plaintiff alleged that his blankets were returned to him unwashed because he had mistakenly left a pair of boxer shorts in the "net bag" with the blankets (id. at 5). He claimed that his unwashed blankets had come in direct contact with other inmates' dirty blankets and that he contracted a serious rash on his body and face after he slept under the dirty blankets (Count

---

[1] Upon screening, the Court dismissed the ADC as a defendant (Doc. #3).

II) (id.).[2] Plaintiff alleged that Defendant, the laundry supervisor, created the unauthorized policy of returning a net bag to an inmate and not washing any of the contents when more than blankets were placed in the bag (id.). Plaintiff claimed that Defendant's return of the knowingly contaminated blankets violated his Eighth Amendment rights (id.). The Court ordered an answer, and Defendant filed a Motion to Dismiss (Doc. ##3, 6).

### A.     Defendant's Motion

In his motion, Defendant contended that Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a) (Doc. #6). Defendant submitted the affidavit of Christian Truog—Grievance Coordinator for the ADC Central Unit—who described the steps in the Inmate Grievance System, which is set forth in ADC Department Order (DO) 802 (id., Ex. A, Troug Aff. ¶ 3). In regard to Plaintiff's attempts to grieve his claim, Troug attested to the following:

(1) On December 5, 2006, Plaintiff initiated the grievance process when he submitted an inmate letter complaining about the return of his unwashed, contaminated blankets on December 4 (id. ¶ 18).

(2) On December 11 the Correctional Officer (CO) III responded to the inmate letter and suggested that Plaintiff shake out his blankets and check his laundry bag before sending it out in the future (id. ¶ 19).

(3) Pursuant to DO 802, a formal grievance must be filed within 10 days of receipt of the CO III response (id. ¶ 12).

(4) On December 18, 2006, Troug received a formal grievance from Plaintiff, though the grievance was dated December 14, 2006 (id. ¶ 20).

(5) Plaintiff's grievance did not include a copy of the inmate letter and the CO III's response as required under DO 802, so Troug returned the grievance as "unprocessed" that same day—December 18—with directions to Plaintiff that he could refile the grievance within the original time limit (i.e., within 10 days from the date he received a response from the CO III) (id. ¶ 21).

(6) An "unprocessed" grievance cannot be assigned a case number (id. ¶ 9).

(7) On January 2, 2007, Plaintiff resubmitted his grievance dated December 14, 2006, and attached copies of the inmate letter and the CO III's response (id. ¶ 22).

(8) Also on January 2, 2007, Troug returned the resubmitted grievance to Plaintiff as "unprocessed" because it was filed more than 10 days after receipt of the CO III's response

---

[2] The Court dismissed Count I because it was duplicative of the allegations in Count II (Doc. #3).

and was therefore untimely and because Plaintiff did not propose a resolution other than instituting a civil action, which indicated that he had no interest in resolving the issue (id. ¶ 23).

(9) On January 13, 2007. Plaintiff filed an inmate grievance appeal in which he complained that Troug twice refused to process his grievances (id. ¶ 24).

(10) On January 16, 2007, Troug returned the grievance appeal as "unprocessed" because Plaintiff used the wrong form and because no grievance appeal will be processed without a valid case number (id. ¶ 25).[3]

(11) On January 29, 2007, Plaintiff submitted an inmate letter to the CO III complaining about the laundry procedures stemming from the December 4, 2006 incident (id. ¶ 26).

(12) On February 12, 2007, the CO III responded to the inmate letter by informing Plaintiff that the procedures are in accordance with the prison's laundry procedures and that there are separate blanket-laundry and regular-laundry days (id. ¶ 27, Attach. 11).

(13) On February 13, 2007, Plaintiff filed a formal grievance complaining about the use of an unauthorized laundry procedure created by Defendant that resulted in physical injury to Plaintiff (id. ¶ 28).

(14) On February 14, 2007, Troug returned this grievance to Plaintiff as "unprocessed" because it was based on the false assumption that the laundry procedure was not authorized by ADC policy and because Plaintiff had already attempted to grieve this issue (id. ¶ 30).

(15) On February 24, 2007, Plaintiff submitted a grievance appeal (id. ¶ 31).

(16) On February 26, 2007, Troug returned the grievance appeal as "unprocessed" because Plaintiff used the incorrect form, no grievance appeal can be processed without a valid case number, and grievances that are returned "unprocessed" are not subject to appeal (id. ¶ 32).

(17) On April 6, 2007, Plaintiff submitted a grievance appeal to the Director (id. ¶ 33).

(18) On April 13, 2007, CO III Brown responded to Plaintiff that an "unprocessed" grievance cannot be appealed (id. ¶ 34).

To support the affidavit, Defendant attached a copy of DO 802 and copies of all of Plaintiff's inmate letters, grievance forms, and the responses thereto (id., Attachs. 1-16).

Defendant argued that Plaintiff is required to properly exhaust the prison's administrative remedies and because he failed to attach the required documents to his first grievance and failed to timely file his resubmitted grievance, he did not properly exhaust (id. at 7-8). Defendant further argued that Plaintiff's subsequent attempts to grieve the same

---

[3]Troug's affidavit states that "no grievance appeal will be processed *with* a valid case number" (Doc. #6, Ex. A, Troug Aff. ¶ 25) (emphasis added). This is clearly a typographical error, as the attachment cited to in support of this statement reflects that the response to the grievance appeal stated that no appeal will be processed "without a valid case #" (id., Attach. 9).

- 3 -

1  issue were untimely (id. at 8).

2  **B.    Plaintiff's Response**

3  The Court issued an Order informing Plaintiff of his obligation to respond and the evidence necessary to successfully rebut Defendant's contentions (Doc. #7).[4] Plaintiff responded that he was unable to exhaust all of his administrative remedies because of administrative mistakes and "roadblocks by the [Grievance Counselor] Troug" (Doc. #8). In his sworn statement, Plaintiff attested to the following:

(1) On December 5, 2006, Plaintiff submitted the inmate letter and received a response from the CO III on December 11 (id. at 1).

(2) On December 14, 2006, Plaintiff submitted his grievance to Troug, and stapled to the grievance form were Plaintiff's inmate letter and the written response to that letter (id.).

(3) On December 16, 2006, Plaintiff received—through the inmate mail—his inmate letter and the written response thereto; however, Plaintiff's grievance was not attached to the documents (id. at 2).

(4) On December 18, 2006, Plaintiff received his grievance, marked "unprocessed," back from Troug (id.). The response indicated that Plaintiff had failed to attach an inmate letter and the CO III's response (id.).

(5) Plaintiff has no control over the grievance paperwork once it leaves his cell (id.).

(6) Plaintiff understood that to comply with the ten day filing deadline, he only had three days left to re-submit another grievance, so he immediately filled out a second grievance form (id. at 3).

(7) Plaintiff wanted his second grievance to be identical to the first so he filled out the form to replicate the original grievance, including the original filing date (December 14) (id.).

(8) On December 18, 2006—the same day he received the first grievance back—Plaintiff re-submitted his grievance (id. at 3).

(9) On January 2, 2007, Plaintiff received his second grievance back marked "unprocessed" because he had exceeded the time limit and because Plaintiff did not propose a resolution other than instituting a civil action (id.).[5]

Plaintiff refuted Defendant's claims that he did not attach the required documents to his first grievance and that he failed to timely refile the grievance. As to the filing of the

---

[4] Notice required under Wyatt v. Terhune, 315 F.3d 1108, 1120 n. 14 (9th Cir. 2003).

[5] The Court will not consider the parties' arguments concerning this second reason for the return of the grievance as "unprocessed" because it does not affect the analysis; the issue is whether this resubmitted grievance was timely.

- 4 -

resubmitted grievance, Plaintiff stated that he was told he had to refile within the same time limits; thus, there is no reason he would have waited 12 days to refile the grievance as Defendant suggested (id. at 4). Plaintiff asserted that he did not wait to refile and, therefore, the January 2 response did not make any sense, so he decided to proceed with the grievance process and appeal to the deputy warden (id.). He filed his grievance appeal on Form 802-3P, which is the requisite form under DO 802 for grievance appeals (id. at 5). As stated, this appeal was returned "unprocessed" in part because it was allegedly on the incorrect form (id.).

Meanwhile, Plaintiff filed an inmate letter on December 27, 2006, to the laundry department inquiring about the laundry procedure; the response on January 8, 2007 informed him that the procedure was unit policy (id. at 6). Then, on January 15, 2007, Plaintiff sent another inmate letter to the laundry department to ask for the policy number because he could not find it. Defendant responded that the laundry procedure is not a policy; rather, Defendant himself established and enforced the procedure (id.). Plaintiff attached copies of these two inmate letters and a copy of the response to the second inmate letter from Defendant (id., Exs. A-C). Plaintiff also submitted a copy of his medical records showing that he was treated for a rash (id., Ex. D).

Plaintiff argued that because he was prevented from a fair opportunity to exhaust his claim, the Motion to Dismiss should be denied (id. at 7).

### C.     Defendant's Reply

In his reply, Defendant contended that Plaintiff's claim that he stapled the proper documents to his first grievance is belied by his failure to make any mention of that fact on either his resubmitted grievance or his grievance appeal (Doc. #9 at 1-2). Similarly, Defendant argued that Plaintiff did not make any mention in his grievance appeal that his resubmitted grievance was timely filed, despite its return to him as "unprocessed" for exceeding the time limit (id. at 2).

## II.    Exhaustion

Plaintiff must first exhaust "available" administrative remedies before bringing this

- 5 -

1 action. See 42 U.S.C. § 1997e(a); Vaden v. Summerhill, 449 F.3d 1047, 1050 (9th Cir.
2 2006); Brown v. Valoff, 422 F.3d 926, 934-35 (9th Cir. 2005). He must complete the
3 administrative review process in accordance with the applicable rules. See Woodford v.
4 Ngo, 126 S. Ct. 2378, 2384 (2006). Exhaustion is required for all suits about prison life,
5 Porter v. Nussle, 534 U.S. 516, 523 (2002), regardless of the type of relief offered through
6 the administrative process, Booth v. Churner, 532 U.S. 731, 741 (2001).

7 Exhaustion is an affirmative defense. Jones v. Bock, 127 S. Ct. 910, 919-21 (2007).
8 Defendant bears the burden of raising and proving the absence of exhaustion. Wyatt, 315
9 F.3d at 1119. Because exhaustion is a matter of abatement in an unenumerated Rule 12(b)
10 motion, a court may look beyond the pleadings to decide disputed issues of fact. Id. at 1119-
11 20. Further, a court has broad discretion as to the method to be used in resolving the factual
12 dispute. Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 369 (9th
13 Cir. 1988) (quotation omitted).

14 According to DO 802, the ADC grievance process consists of four steps (Doc. #6,
15 Attach. 1). The first step of the process requires an inmate to submit an inmate letter in an
16 attempt at an informal resolution (id. at 5). If the inmate is not satisfied with the response
17 to his inmate letter, he may file a formal grievance to the Grievance Coordinator within ten
18 days of receiving that response (id. at 6). If the inmate fails to explain his attempts at
19 informal resolution in the formal grievance, the formal grievance is returned "unprocessed"
20 to the inmate (id.). The inmate can correct the problem and resubmit the formal grievance
21 within the original 10-day time frame (id.). The response to the formal grievance may be
22 appealed within 10 days to the Deputy Warden, whose response may be appealed to the
23 Director (id. at 7). The Director's response is final and exhausts the administrative remedies
24 (id.).

25 **III. Analysis**

26 Under Ninth Circuit law, "a prisoner need not press on to exhaust further levels of
27 review once he has either received all 'available' remedies at an intermediate level of review
28 or been reliably informed by an administrator that no remedies are available." Brown, 422

- 6 -

F.3d at 935. Thus, to carry his burden to prove lack of exhaustion, Defendant must show that there were remedies available to Plaintiff. See Wyatt, 315 F.3d at 1119; Brown, 422 F.3d at 936-37. Defendant contends that there were remedies available but Plaintiff failed to properly and timely utilize those remedies. Plaintiff asserts that he was prohibited from properly utilizing those remedies. If Plaintiff's assertion is true, it would mean that he exhausted all "available" remedies. See Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003) citing Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001) (a remedy prison officials prevent a prisoner from utilizing is not an available remedy).

The Supreme Court has held the PLRA's exhaustion requirement cannot be satisfied "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." Woodford, 126 S. Ct. at 2382. Rather, the exhaustion requirement requires "proper exhaustion" of available administrative remedies. Id. at 2387. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 2386 (footnote omitted).

Defendant has thoroughly documented the grievance process and Plaintiff's failure to properly exhaust his claim through each level of administrative review. Plaintiff's claims—though supported in a sworn declaration—are not supported by documentary evidence. Plaintiff states that he stapled the inmate letter and CO III response to his first grievance; however, his resubmitted grievance, which he filed solely because he was told those documents were missing, makes no reference to the fact that he had already submitted the documents. While Plaintiff maintains that he refiled his grievance on December 18, 2006, there is no record of any filing on that date. Instead, the grievance form reflects that it was dated December 14, 2006, by Plaintiff and received by the Grievance Coordinator on January 2, 2007 (Doc. #6, Attach. 6). Everything on the face of the document supports the affidavit testimony of Troug. And the grievance appeal that Plaintiff filed after the resubmitted grievance was rejected for untimeliness makes no argument that the basis for the rejection was incorrect. Further, the Court notes there is no dispute about the filing and

1 response dates of any of Plaintiff's other grievance forms; thus, there is no indication of a
2 pattern of "mistakes" by the administration as Plaintiff contends.
3      In sum, all the grievance forms, to which neither party objects, support the affidavit
4 and argument submitted by Defendant. While the forms do not directly contradict Plaintiff's
5 claims, they do not support them either. Without documentary evidence to support his
6 claims, Plaintiff cannot overcome Defendant's evidence showing nonexhaustion. Moreover,
7 Plaintiff has not shown that the grievance process was rendered unavailable. On this record,
8 the Court finds that Defendant has met his burden to demonstrate the failure to exhaust
9 available administrative remedies.

10      **IT IS ORDERED** that Defendant's Motion to Dismiss (Doc. #6) is **granted**. The
11 Clerk of Court must dismiss this action without prejudice and enter judgment accordingly.
12      DATED this 14th day of January, 2008.

*/s/ Mary H. Murguia*
Mary H. Murguia
United States District Judge